**BEVAN, MOSCA & GIUDITTA, P.C.**
A Professional Corporation
222 Mount Airy Road, Suite 200
Basking Ridge, New Jersey
07920 (908) 753-8300
William K. Mosca, Jr. 014712004
*Attorneys for Plaintiff Cross River Fiber, LLC*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CROSS RIVER FIBER, LLC, | Civil Action No. _____ |
| Plaintiff, | |
| v. | Honorable _____ |
| TOWNSHIP OF WEEHAWKEN, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v) AND ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 1988

Plaintiff, Cross River Fiber, LLC ("Cross River" or "Plaintiff"), by its undersigned

attorneys, as and for its Complaint against the Township of Weehawken, New Jersey (the

"Township" or "Defendant"), respectfully alleges as follows and hereby petitions this Court to:

conduct an expedited review of Defendant's failure to act, in violation of federal and state law,

on applications submitted by Plaintiff for access to the public rights-of-way to install

telecommunications infrastructure; grant injunctive and declaratory relief to Plaintiffs approving

the applications and permitting access to the public rights-of-way; grant injunctive and

declaratory relief directing the Defendant to issue all permits required to complete installation of

telecommunications infrastructure; and awarding attorneys' fees to Plaintiff for the Township's

clearly disparate treatment of Cross River in violation of 42 U.S.C § 1983.

## **INTRODUCTION**

1.      For over two years, Cross River has been working to obtain Defendant's approval for the deployment of small cell facilities for mobile phone coverage and mobile internet access on roads controlled by the Defendant. Throughout that time, Defendant has engaged in a pattern of conduct which has unreasonably and unlawfully delayed and prevented Cross River from installing small cell facilities.

2.      The deployment of small cells is an important step in improving telecommunications services to Township residents and businesses in that it ensures that those residents and businesses have the best possible access to wireless communications and mobile access to the internet at competitive pricing. As it stands today, those residents and businesses are at risk for lagging behind neighboring – thereby competing – cities, townships and boroughs.

3.      Unfortunately, despite Plaintiff's best (and repeated) efforts, the Township has shown itself to be unwilling to approve Cross River's applications for installation of small cell facilities, causing great injury to Plaintiff and the Township's residents.

4.      The Township's inactions are clear violations of federal and New Jersey law and this lawsuit is necessary to stop Defendant's continued violation of applicable law and avoid irreparable harm to Plaintiff (as well as irreparable harm to Defendant's own residents).

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to: (a) 47 U.S.C. §§ 253 and 332(c)(7)(B) of the Telecommunications Act (the "Act," *infra*) because Cross River has been adversely affected and aggrieved by Defendant's failure to act in violation of those provisions of the Act; and (b) 28 U.S.C. § 1331 because this is a civil action that presents

2

federal questions arising under the Act.

6.      This Court also has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983 because the Township's actions and inactions have deprived Cross River of rights, privileges, and immunities secured by the Due Process Clause of the United States Constitution, the Telecommunications Act, and New Jersey State law. Moreover, this Court has jurisdiction pursuant to 42 U.S.C. § 1988 to order an award of attorneys' fees, because this lawsuit is necessary to seek redress for the Township's violations of 42 U.S.C. § 1983.

7.      This Court has jurisdiction to order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and has supplemental jurisdiction to hear any state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over the Defendant, and venue is proper in this Court, as the Defendant conducts continuous, systematic, and routine business within the County of Hudson in the State of New Jersey and within the jurisdiction of this Court, pursuant to 28 U.S.C. § 110.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in the District of New Jersey.

## EXPEDITED PROCEEDING

10.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, this Court "shall hear and decide [this] action on an expedited basis."

## THE PARTIES

11.     Cross River is a Delaware limited liability company and maintains its principal place of business at 461 Headquarters Plaza, Morristown, New Jersey.   Cross River is a

communications infrastructure company serving the New York and New Jersey metropolitan region and holds a Certificate of Public Convenience and Necessity ("CPCN") from the New Jersey Board of Public Utilities authorizing it "to provide local exchange and interexchange telecommunications services throughout the State of New Jersey."[1]

12.    As a holder of a CPCN, Cross River is a "Public Utility" as defined under New Jersey law. N.J.S.A. 48:2-13(a). Cross River builds, owns, and operates wholesale fiber optic cables and other facilities that improve the coverage and capacity of both new and existing wireless networks. In the Applications at issue in this matter, Cross River proposed to install Small Wireless Facilities to be mounted on new utility poles in the Township's public rights-of-way and fiber optic facilities to the new poles required for the proper operation and function of the Small Wireless Facilities. (*Infra*. at ¶¶ 15-21).

13.    FCC-licensed wireless service providers ("Carriers") pay Cross River to use its wireless infrastructure facilities and to assist them in providing wireless telecommunications services to retail consumers. Carriers using Cross River's facilities will also be negatively affected by Defendant's actions and inactions.

14.    Defendant is a body politic and corporate of the State of New Jersey with a principal place of business at 400 Park Avenue, Weehawken, New Jersey 07086. Upon information and belief, Defendant has authority under State and federal law to manage access to public rights-of-way for equipment used in the provision of telecommunications services.

## FACTS

### The Applications

---

[1] *See In the Matter of the Petition of Cross River Fiber, Inc for Authority to Provide Local Exchange and Interexchange Telecommunications Services Throughout the State of New Jersey*, N.J. Bd. of Pub. Util., Docket No. TE12040297, June 18, 2012. Cross River later reorganized from a corporation into a limited liability company on November 1, 2014.

4

15.     The facts relevant to this matter began on September 3, 2020, when the Town Administrator for the Township was first advised that Cross River had submitted an application for Cross River to install its fiber optic network for a Carrier on five (5) existing Public Service Electric & Gas Company ("PSE&G")/Verizon ("Verizon, Inc.") utility poles and on a number of new utility poles in the Township and to allow the Carrier to install small cell equipment on those utility poles to connect to the Carrier's network.

16.     Small cells are low-powered cellular radio access nodes that operate on both licensed and unlicensed spectrum. Small cells are currently viewed as a solution for wireless carriers to allow their existing wireless networks to provide for the expanded data capacity of "5G" networks.

17.     After September 3, 2020, Cross River made numerous attempts to reach agreement or accommodations with the Township to allow Cross River to install at least some small cell facilities in the Township.  Among other things, Cross River elected to seek formal approval to install small cell facilities only on the 5 existing poles.  Despite Cross River's efforts, the Township failed and refused to approve any application for installation of any of the poles and small cell facilities in a timely manner.  As a result, on August 21, 2021, Cross River was compelled to file a lawsuit in this Court against the Township, seeking at that time relief only with respect to the 5 existing poles.[2]

18.     Only after Cross River filed the Prior Lawsuit did the Township approve applications for the installation of small cell facilities on  the 5 of existing poles.  When it was no longer necessary for Cross River to pursue the Prior Lawsuit, it was dismissed pursuant to Local

---

[2] *Cross River Fiber, LLC v. Township of Weehawken*, United States District Court, District of New Jersey, Case No. 2:21_cv_15383 (SDW) (MAH) (the "Prior Lawsuit").

Civil Rule 41.1(a).  Unfortunately, this action is necessary to again compel the Township to comply with federal and state law.

19.     On February 22, 2022, Cross River submitted (i) 8 individual applications to install new poles in public rights-of-way in the Township and "Small Wireless Facilities," as defined in 47 CFR 1.6002(l), on each of the poles and (ii) an "Application for Cable Communication System License," to connect new and existing fiber in Township rights-of-way to the 8 new poles (collectively, the 8 individual pole applications and the Application for Cable Communication System License, the "Applications").

20.     As will be discussed, the February 22, 2022 filing of the Applications triggered both the ten (10) day "shot clock" for the Township to object to the completeness of the Applications and the ninety (90) day "shot clock" to grant or deny the Applications.  The Township did not submit a notice of incompleteness to Cross River within the required 10 days, nor has the Township acted at all on the Applications within the 90-day shot clock period.

21.     Accordingly, Cross River now requests injunctive and other appropriate relief so that it may proceed to promptly install the 8 new poles and new and existing fiber to the 8 new poles, including an order directing Weehawken to issue all approvals and permits, including without limitation all no parking or other permits so that Cross River and its contractors can promptly and safely complete all required installation and construction work.

## COUNT I
### (Violation of 47 U.S.C. § 253(c) and § 332(c)(7)(B)(i)(I) – Shot Clock Violation)

22.     Cross River repeats and realleges paragraphs 1 through 21 stated above and incorporates those paragraphs by reference, as though fully stated here.

23.     In 1996, Congress enacted the Telecommunications Act of 1996, No. 104-104,

110 Stat. 56 (1996), which amended the Communications Action of 1934, codified in 47 U.S.C. §151 et seq., as a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans . . . ."[3]

24.     Congress has declared that there is a need for wireless communication services, including "personal wireless services," as set forth in the Act, and the rules, regulations and orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto.

25.     To foster its pro-competitive, deregulatory national policy, Congress included provisions in the Act that encourage competition by restricting the regulation of the placement of personal wireless service facilities by State and local governments and instrumentalities thereof.

26.     Section 332(c)(7) of the Act imposes substantive and procedural limitations on state and local governments and instrumentalities thereof to ensure that the Act's pro-competitive goals are not frustrated, and it expressly preempts any action or inaction by State or local governments or their agents that effectively prohibits the provision of wireless services.

27.     Section 332(c)(7) of the Act attempts to strike a balance between "preserv[ing] the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers" and "reduc[ing] . . . the impediments imposed by local governments upon the installation of facilities for wireless communications."[4]

---

[3]  The Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).

[4]  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115; 125 S. Ct. 1453, 161 L.Ed.2d 316, (2005).

28.     While Section 332(c)(7)(A) of the Act preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," that authority is subject to significant limitations – including Section 332(c)(7)(B)(i) of the Act.

29.     Section 332(c)(7)(B)(i) of the Act provides that "(t)he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (I) shall not unreasonably discriminate among providers of functionally equivalent services; . . ."[5]

30.     Section 332(c)(7)(B)(v) of the Act provides that:

> any person adversely affected by any final action . . . by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action . . ., commence an action in any court of competent jurisdiction.

31.     As the federal agency tasked with implementing the Act, the FCC has the authority to promulgate rules and regulations to achieve the purposes of the Act.

32.     Pursuant to its statutory authority, in November 2009, the FCC adopted an initial order establishing what constitutes a "reasonable period of time" under the Act for a State or local government or instrumentality thereof to take action on an application for a wireless communications site.[6]

33.     In the 2009 "Shot Clock Order," the FCC recognized that "personal wireless

---

[5] 47 U.S.C. § 332(c)(7)(B)(i).

[6] *In the Matter of the Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, WT 08-165, FCC 09-99, 24 F.C.C.R. 13,994 ¶ 71, Nov. 19, 2009 (the "2009 Shot Clock Order").

service providers have often faced lengthy and unreasonable delays in the consideration of their facility siting applications, and that the persistence of such delays is impeding the deployment of advanced and emergency services."[7] In so holding, the FCC sought to promote the deployment of broadband and other critical wireless services[8] such as the Small Cell Facilities at issue in this matter.

34.    The FCC (*Id.* at ¶ 92) noted that the purpose of this "shot clock deadline" was to give State and local governments or instrumentalities thereof, "a strong incentive to resolve application within the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application. In addition, specific timeframes for State and local government deliberations will allow wireless providers to better plan and allocate resources. This is especially important as providers plan to deploy their new broadband networks."[9]

35.    On September 26, 2018, the FCC issued a report and order that, *inter alia,* clarified its policy with respect to the deployment of personal wireless service facilities known as Small Wireless Facilities (the "Small Cell Order").[10]

36.    In its Small Cell Order, the FCC "adopt[ed] two new Section 332 shot clocks for Small Wireless Facilities:  60 days for review of an application for collocation of Small Wireless

---

[7] *Id.* at ¶32.

[8] *Id.*

[9] *Id.* at ¶38.

[10] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment; Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, WT 17-29, WC 17-84, FCC 18-133, 33 F.C.C.R 9088, Sept. 26, 2018 ("Small Cell Order"). The Small Cell Order became effective as of January 14, 2019. 83 Fed. Reg. 51,867 (2018). The Small Cell Order was upheld by the Court for all matters relevant to this action in *City of Portland v. United States*, 969 F.3d 1020 (9th Cir., Aug. 12, 2020), in which the Court found that "[t]he FCC here made factual findings, on the basis of the record before it, that certain municipal practices are materially inhibiting the deployment of 5G services." *Id.* at 1035.

Facilities using a preexisting structure and 90 days for review of an application for attachment of Small Wireless Facilities using a new structure."[11] The FCC also ordered that a siting authority could toll the shot clock if an application was incomplete, but only if the siting authority notified the applicant on or before the 10th day after submission that the application is materially incomplete, and clearly and specifically identified the missing documents or information and the specific rule or regulation creating the obligation to submit such documents or information.[12] The FCC further "confirm[ed] that our interpretations today extend to state and local governments' terms for access to public ROW that they own or control, including areas on, below, or above public roadways, highways, streets, sidewalks, or similar property, as well as their terms for use of or attachment to government- owned property within such ROW, such as new, existing and replacement light poles, traffic lights, utility poles, and similar property suitable for hosting Small Wireless Facilities."[13]

37.   Section 253(c) of the Act limits the power of State and local government authorities to "manage the public rights-of-way" on a "competitively neutral and nondiscriminatory basis." In its Small Cell Order, the FCC noted that "courts have recognized that states and localities 'hold the public streets and sidewalks in trust for the public' and 'manage public ROW in their regulatory capacities."[14]   The FCC determined that "Section 253(c) is properly construed to suggest that Congress did not intend to permit states and localities to rely

---

[11] 2009 Shot Clock Order at ¶ 105. The FCC's "Shot Clock" timelines are codified by the FCC at 47 C.F.R § 1.6003.

[12] *Id.* at ¶ 93; see also 47 CFR § 1.6003(d)(1).

[13] *Id.* at ¶ 92.

[14] *Id.* at ¶96 (citations omitted); See *State v. Twp. of South Hackensack*, 65 N.J. 377, 383, 322 A.2d 818 (1974); *New Jersey Payphone Ass'n v. Town of West N.Y.*, 130 F. Supp. 2d 631, 638 (D.N.J. 2001), aff'd 299 F.3d 235 (3rd Cir. 2002).

on their ownership of property within a ROW as a pretext to advance regulatory objectives that prohibit or have the effect of prohibiting the provision of covered services, and thus that such conduct is preempted."[15]

38.     In its Small Cell Order, the FCC also determined that excessive fees for wireless facility applications may result in an effective prohibition of service and were therefore preempted.[16]

39.     The FCC held "that ROW access fees, and fees for the use of government property in the ROW, such as light poles, traffic lights, utility poles, and other similar property suitable for hosting Small Wireless Facilities, as well as application or review fees and similar fees imposed by a state or local government as part of their regulation of the deployment of Small Wireless Facilities inside and outside the ROW, violate Sections 253 or 332(c)(7) unless these conditions are met: (1) the fees are a reasonable approximation of the state or local government's costs, (2) only objectively reasonable costs are factored into those fees, and (3) the fees are no higher than the fees charged to similarly-situated competitors in similar situations."[17]

40.     The Township has the duty and authority to maintain all roadways within its jurisdiction and Cross River sought Defendant's consent pursuant to N.J.S.A. 27:16-6.  Based on information and belief, each of the locations at which Cross River has applied to install new poles and other facilities referenced in the Applications are within the Township's public rights-of-way or under Defendant's jurisdiction.  Therefore, under federal law, for purposes of the deployment of personal wireless service facilities, the Township is the "siting authority" which is defined at

---

[15] *Id.* at ¶ 97.

[16] *Id.* at ¶50.

[17] *Id.*

47 C.F.R. § 1.6002(k) as follows:

> Siting authority means a State government, local government, or instrumentality of a State government or local government, including any official or organizational unit thereof, whose authorization is necessary prior to the deployment of personal wireless service facilities.

41.     The Applications constitute requests for the placement of Small Wireless Facilities and, as such, Cross River is entitled to the benefits and protections of the Act, FCC Orders, and the FCC's Rules and Regulations with respect to the Applications.

42.     The FCC's 10-day and 90-day shot clock rules for new structures commenced on February 22, 2022, when Cross River submitted the Applications.  Defendant did not object to the completeness of the applications on or before March 4, 2020.  Therefore, the Applications are deemed complete by law as of that date.  Defendant has failed to properly evaluate and act on Cross River's Application consistent with federal and State law in violation of 47 U.S.C. § 253(c) & 332(c)(7)(B)(i)(I).

43.     Defendant's refusal to act on Cross River's Applications on or before May 23, 2022, is a violation of Sections 253 and 332 of the Act, is not consistent with proper right-of-way management and was palpably unreasonable, arbitrary, capricious, and contrary to the requirements of the Act and Plaintiff's rights thereunder.

44.     Under Sections 253(a) and 332(c)(7)(B) of the Act, Cross River is entitled to injunctive and declaratory relief that orders Defendant to approve the Applications and permit it access to the public rights-of-way to install the utility poles and other facilities necessary to construct the Small Wireless Facilities.  Such order should include a provision requiring Weehawken to promptly issue all permits required by Cross River and its contractors to conduct and complete installation and construction activities, including without limitation any no parking permits or other permits allowing Cross River and its contractors to work safely in the

Defendant's public rights of way.

45.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), this Action is timely filed within thirty (30) days of the Defendant's failure to act on the Applications.

## COUNT II
### (*Violation of Cross River's Constitutional Rights,*
*Cognizable as Violations of its Civil Rights Under 42 U.S.C. § 1983*)

46.    Cross River repeats and re-alleges paragraphs 1 through 45 stated above and incorporates those paragraphs by reference, as though fully stated here.

47.    The Township's actions and inactions have deprived Cross River of rights, privileges and immunities secured both by the Due Process Clause of the United States Constitution, in that the Township's actions and inactions, which have resulted in an unreasonable delay of the deployment of Small Wireless Facilities, were unfair, arbitrary and capricious, and lacking in a rational basis. These actions have deprived Cross River of important property rights also guaranteed by the Due Process Clause.

48.    42 U.S.C. § 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law suit in equity, or other proper proceeding for redress." Defendant is recognized as a "person" under this section. Accordingly, this Court should declare that Defendant's actions and inactions violate 42 U.S.C. § 1983 by depriving Cross River of the rights, privileges and immunities afforded to it by the Constitution of the United States, and hold that Defendant's actions and inactions violate Cross River's rights of due process and of equal protection of the laws, and that Cross River is entitled

to injunctive and other relief as described in the prayer for relief at the end of this Complaint. Furthermore, this Court should award attorneys' fees to Cross River pursuant to 42 U.S.C. § 1988.

49.    On information and belief, the Township has granted other, similarly situated entities providing personal wireless services with rights and privileges which it has denied Cross River.  The Township's failure to treat Cross River in a similar manner has denied Cross River's right to due process under the Equal Protection Clause of the United States Constitution.  Cross Rover's claim for violation of its rights under the Equal Protection Clause are cognizable under 42 U.S.C. § 1983.

## COUNT III
***(Violation of Cross River's Rights Under the New Jersey Constitution)***

50.    Cross River repeats and re-alleges paragraphs 1 through 49 as stated above and incorporates those paragraphs by reference, as though fully stated here.

51.    Article I, paragraph 1 of the New Jersey Constitution states: "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

52.    Encompassed within this constitutional provision, ensuring such rights, are the requirements of due process.

53.    Defendant's actions and inactions have deprived Cross River of its rights of due process under the New Jersey Constitution, in that Defendant's decision to unreasonably delay some, but not all, installation of telecommunications and related devices in public rights-of-way is unfair, arbitrary and capricious, and lacking in a rational basis.

54.     Accordingly, Defendant's actions and inactions should be declared to be in violation of, and preempted by, constitutional guarantees of due process, and should be set aside and enjoined by the Court on that basis.

<u>**COUNT IV**</u>
*(For Declaratory Relief and Permanent Injunction)*

55.     Cross River repeats and re-alleges paragraphs 1 through 54 stated above and incorporates those paragraphs by reference, as though fully stated here.

56.     A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. Cross River contends that Defendant's actions violate the Act, the Small Cell Order and New Jersey state law. Cross River and the public have been and will continue to be adversely affected by the Defendant's action.

57.     Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Cross River's rights and the Defendant's obligations and authority.

58.     As a result of Defendant's actions, Cross River has been, and will continue to be, damaged and irreparably harmed absent the relief requested herein.

59.     The harm caused by the Defendant's actions and inactions include, but is not limited to, imposing excessive and unlawful costs on Plaintiff and impairing Cross River's (a) ability to provide the public with reliable wireless telecommunications service; (b) ability to compete with other providers of telecommunications services; (c) full use of its existing FCC and New Jersey telecommunications authorizations; and (d) business investment, good will and business reputation.

60.     Cross River has a likelihood of success on the merits because it is entitled to access public rights-of-way under State and federal law and there is no reasonable justification for

15

Defendant's failure to approve the Applications.

61.     The harm that Cross River has suffered and continues to suffer from the Defendant's actions is not reasonably susceptible to accurate calculations and cannot be fully and adequately addressed through an award of damages.

62.     Given that the matter in dispute is Defendant's unlawful treatment of Cross River, Cross River cannot be made completely whole by damages and has no other adequate remedy at law other than the Court ordering that the Applications be deemed granted or by the Court compelling Defendant to issue all necessary approvals.

63.     The balance of equities tips in Cross River's favor in that it has proceeded throughout the process in good faith while Defendant has delayed action on the Applications.

64.     In contrast to the immediate and irreparable injury being suffered by Cross River, its customers, and the public interest, the Defendant will suffer no significant injury if the Court issues the requested injunction.

65.     As such, Cross River is entitled to a judgment and order of permanent injunction compelling Defendant to issue permits and any other approvals required to allow Cross River to install the utility poles and other telecommunications infrastructure in the public rights-of-way that are the subject of this action.

## **RELIEF SOUGHT**

**WHEREFORE**, Cross River respectfully requests that, pursuant to 47 U.S.C. § 322(c)(7)(B)(v), the Court hear and decide this action on an expedited basis, and issue an Order and Judgment in its favor as follows:

   a.   finding and deciding that Defendant's actions constitute unreasonable management of the public rights-of-way and in the provision of functionally

equivalent personal wireless and telecommunications services against Cross River in violation of 47 U.S.C. § 253(c) and 47 U.S.C. § 332(c)(7)(B)(i)(II);

b.  finding and declaring that Defendant's actions and inactions violate New Jersey law;

c.  granting Cross River's Applications and issuing an order requiring that Defendant immediately approve the Applications and issue, pursuant to federal and New Jersey law, all approvals, necessary permits and authorizations for Cross River to immediately install its utility poles and associated infrastructure in the public-rights-of-way as set forth in the Cross River Application, including without limitation no parking permits and any other required permit for Cross River and its contractor to safely construct and install fiber as set forth in the Applications;

d.  awarding Cross River its reasonable attorneys' fees, costs, disbursements and other expenses of this action as permitted by law; and

e.  granting such other and further relief as the Court deems just and proper.


BEVAN, MOSCA & GIUDITTA P.C.
Attorneys for the Plaintiff, Cross River Fiber, LLC


By: _____
        William K. Mosca, Jr.

Date:  June 1, 2022

## L. CIV. R. 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, and 28 U.S.C. § 1746, the undersigned member of the bar of this Court hereby declares that the matter in controversy is not presently the subject of any other action pending in any other Court, or of any pending arbitration or administrative proceeding.

BEVAN, MOSCA & GIUDITTA P.C.
Attorneys for the Plaintiff, Cross River Fiber, LLC

By: _William K. Mosca Jr._

Date:  June 1, 2022